**Hamilton Clarke, LLP**
Lance A. Clarke, Esq.– N.J. Atty. No. 027852007
48 Wall Street, Suite 1100
New York New York 10005
*Attorneys for Plaintiff PIERRE LINDOR, JR*

| | |
|---|---|
| PIERRE LINDOR, JR<br><br>Plaintiff,<br><br>v.<br><br>CITY OF JERSEY CITY, JERSEY CITY POLICE DEPARTMENT, SERGEANT KEITH ARMSTRONG, in his individual and official capacities, and JOHN DOES 1-10,<br><br>Defendants. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>DOCKET NO.<br><br>**CIVIL**<br><br>**COMPLAINT** |

Plaintiff PIERRE LINDOR, JR ("LINDOR" or "Plaintiff") hereby alleges and complains as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees to redress Defendants' abuse of process, malicious prosecution, false arrest, retaliation and false statements against Plaintiff in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; the New Jersey Constitution; and the New Jersey Civil Rights Act N.J.S.A. 10:6-2.

## JURISDICTION

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

**VENUE**

4. Venue is properly laid in the District of New Jersey under 28 U.S.C. § 1391(b), in that all conduct giving rise to the instant claim(s) arose in this District.

**JURY DEMAND**

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

6. LINDOR is an individual who at all times relevant, resided – 5 Astor Place, City of Jersey City, County of Hudson, State of New Jersey.

7. Defendant City of Jersey City ("JC") is a municipal corporation formed and operating under the laws of the State of New Jersey.

8. Defendant Jersey City Police Department ("PD") is the established police department of the City of Jersey City. At all times relevant, JC owned, maintained and/or controlled the PD and employed the various individual defendants sued herein.

9. Defendant Keith Armstrong ("Armstrong," and, together with JC, PD, and John Does 1 through 10, the "Defendants," and, each, a "Defendant") is an individual who, upon information and belief is, and at all times relevant, was and has been a Sergeant in the Jersey City Police Department. Defendant Armstrong is sued in both his individual and official capacities.

10. LINDOR is unaware of the true names or capacities of Defendant Does 1 through 10, and therefore sues such Defendants by fictitious names. LINDOR hereby reserves his rights to amend the Complaint as a result of pleading such fictitious parties, and will seek leave of this Court to insert true names and capacities once they are ascertained.

11. At all times mentioned herein, Defendants, and each of them, inclusive of Does 1 through 10, were authorized and empowered by each other to act, and did so act as agents of each other, and all of the claims herein alleged to have been done by them were thus done in capacity of such agency. Upon information and belief, all Defendants are responsible in some manner for the events described herein, and are liable to LINDOR for the damages LINDOR has incurred.

12. As LINDOR is a Jersey City resident; as all Defendants are located in and/or have a material nexus to Jersey City; as all of Defendants' wrongful acts, as set forth herein, occurred in or about Jersey City; and as LINDOR's various claims sound in New Jersey state and United States law, this Court is the proper forum for trial in this action.

## FACTS COMMON TO ALL COUNTS

13. LINDOR repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

14. This action revolves around the violation of LINDOR's civil rights due to the unlawful behavior of Defendants – and, most specifically, of ARMSTRONG.

15. Alas, JC, PD and the various other Defendants are well-aware LINDOR is not ARMSTRONG's first victim: ARMSTRONG is a serial abuser of his police authority,

and has routinely offensively wielded his badge against innocent civilians with whom he has started disputes.

16. Indeed, JC, PD and the other Defendants have investigated ARMSTRONG related to more than *two dozen* complaints from residents he has traumatized – and, before he targeted LINDOR, even put ARMSTRONG on modified duty as a result of his abusive and psychotic behavior.

17. The facts of this case demonstrate ARMSTRONG's continued abuse of his authority as a police officer.

18. On May 28, 2017, LINDOR attended a Wedding Engagement Party on Memorial Day Weekend gathering (the "Gathering") hosted by his cousin, Gerald Guillaume, at Mr. Guillaume's home near Bayview Cemetery. Of note, LINDOR was not drinking alcohol nor consuming any other inebriating substances at the Gathering.

19. In the late-afternoon or early-evening on May 28, 2017, LINDOR first saw ARMSTRONG, who was a neighbor of Mr. Guillaume's. ARMSTRONG was in civilian clothing and was thus presumed be off duty at the Gathering as LINDOR further observed him socializing with other guests.

20. Later in the evening, LINDOR briefly left the gathering and went across the street to visit Mr. Guillaume's uncle whom LINDOR knew.

21. At approximately 10:00 p.m., while still at Mr. Guillaume's uncle's home, LINDOR noticed police cars pulling up to Mr. Guillaume's house – when he looked closer, he saw Mr. Guillaume and ARMSTRONG arguing.

22. More police cars continued to arrive – approximately ten in total – and LINDOR watched ARMSTRONG place Mr. Guillaume and two others under arrest.

23. LINDOR crossed the street to Mr. Guillaume's front yard, where ARMSTRONG was standing, and asked ARMSTRONG why he was arresting Mr. Guillaume and the two others.

24. ARMSTRONG replied, "Shut the fuck up and mind your business or I'll lock you up too."

25. LINDOR replied that he did nothing wrong, and that ARMSTRONG had no basis to arrest him.

26. ARMSTRONG asked for LINDOR's ID and LINDOR refused, again reiterating he had done nothing wrong, and further because ARMSTRONG was off-duty and in street clothes, LINDOR did not believe he had to comply with ARMSTRONG's request.

27. ARMSTRONG called one of the many present on-duty officers over to request LINDOR's ID – LINDOR promptly provided his license to an Officer Ortiz and verbally identified himself by name, address, and phone number.

28. ARMSTRONG told LINDOR he would be getting a summons in the mail.

29. According to police reports recorded by ARMSTRONG, Mr. Guillaume and the two others who were arrested at the Gathering also received summonses to Jersey City Municipal Court.

30. LINDOR attended Municipal Court with the three other defendants. However, when he identified himself to the court clerk, the court clerk told LINDOR there were no charges against him and he was free to leave.



31. Mr. Guillaume thereafter filed suit against the Defendants for ARMSTRONG's and the other officers' actions at and after the very Gathering described *supra*, alleging that ARMSTRONG had lied in his police report to secure Mr. Guillaume's arrest.

32. Notably, in his police report, ARMSTRONG did not mention that he had been at the Gathering himself.

33. Unbeknownst to LINDOR, On April 4, 2018, more than ten months after the Gathering, Jersey City Detective Simmons, Juvenile Law Enforcement Officer, signed an Affidavit of Probable Cause for LINDOR's arrest based on the observations made by ARMSTRONG concerning LINDOR's alleged actions on the night of the Gathering.

34. Also on April 4, 2018, and unbeknownst to LINDOR, Jersey City Municipal Court Judge Ramy Eid issued a Warrant for LINDOR's arrest, less than two months before the statute of limitations would have run for the charges leveled therein. This warrant was issued base upon a finding of probable cause made by Detective Simmons' in his Affidavit. The warrant charged LINDOR with Disorderly Conduct and Riot[ing] as defined by N.J.S.A. 2C:33-1 and 2C:33-2a.

35. In mid-November 2019, at about 9:00 a.m., LINDOR went to the Municipal Courthouse at 365 Summit Avenue, Jersey City, NJ 07306 to be fingerprinted for a required background check for his business license necessary to extend his current automotive dealership to include service repair. While he was waiting, a police officer asked LINDOR for his name. Upon LINDOR identifying himself, the officer placed LINDOR under arrest.

6

36. LINDOR asked why he was being arrested and the officer said there was a warrant out for his arrest. LINDOR was taken to jail and questioned about the Gathering, from nearly two-and-a-half years prior. LINDOR told the officer that he had attended court for that matter and no charges had been filed against him, and that according to his own knowledge and belief, the charges against the other defendants had been dropped.

37. The next morning, while in still in custody LINDOR had a video conference with Superior Court Judge Atkinson who requested LINDOR attend municipal court and told LINDOR that he would be released without a bond if he agreed.

38. LINDOR ultimately spent approximately 36 hours in jail – he was released at approximately 10:00 p.m., the day of his initial video conference, and only after agreeing to submit to Tuberculosis Test, which he previously refused, but was informed would be required for his release.

39. Upon release, LINDOR was denied a phone call to arrange transportation and was forced to walk from Hudson County Jail to Jersey City in shorts and a tee-shirt, as his property was given to a colleague when LINDOR was informed he was being taken into custody.

40. Soon after, LINDOR appeared in municipal court for the arrest in question. At Court, a Jersey City Municipal Prosecutor refused to dismiss his charges. Because LINDOR did not want to spend the money to hire an attorney to defend himself against charges he saw as entirely meritless, LINDOR agreed to a program through which he would perform roughly two days of community service and the charges against him would be dismissed and expunged without LINDOR pleading to any charges or needing to hire an attorney.

41. LINDOR performed community service at the Triangle Park Community Center in Jersey City, and the charges against him under N.J.S.A. 2C:33-1 and 2C:33-2a were dismissed and expunged.

42. According to the Arrest Warrant issued for LINDOR on April 4, 2018, ARMSTRONG requested a New Jersey Motor Vehicle Commission ("MVC") search of LINDOR's name on June 1, 2017, and identified LINDOR based on his MVC picture and information from the Gathering.

Armstrong's Psychotic History

43. As mentioned above, ARMSTRONG's abuse of LINDOR is hardly an isolated incident. Indeed, Armstrong has a reputation being a "psycho cop" – and, the PD and JC both *know* it.

44. To wit, due to his illicit targeting of Jersey City citizens, JC has previously squared off against ARMSTRONG in Court. In Armstrong v. City of Jersey City, 2012 WL 163007 (App. Div. 2012), JC defended its decision (under a former Mayoral Administration) to place Armstrong on desk duty.

45. Per the Appellate Division opinion in Armstrong, the PD had received more than *two dozen* complaints from citizens about Armstrong (an "unusually high number," the court noted), where "most of the complaints were from [Armstrong's] Jersey City neighbors." Id.

46. In a familiar pattern, those neighbors, such as Mr. Guillaume, claimed ARMSTRONG engaged them in confrontations, then "targeted them for minor infractions in the neighborhood, such as traffic, parking and municipal snow removal violations." Id.

47. Frequently, ARMSTRONG would call a nearby police station and demand other officers respond to the scene, just as he did on the night of the Gathering. Id. When on-duty officers arrived, ARMSTRONG would nonetheless "personally" issue tickets or otherwise charge his neighbors for crimes they did not commit. Id.

48. For instance, on one occasion, ARMSTRONG initiated an argument with a neighbor, then charged him with "failing to produce a driver's license, although the neighbor had displayed his license to the uniformed officers [Armstrong had called to the scene]." Id.

49. Ultimately, the complaints against Armstrong became so numerous and serious, JC and PD ordered Armstrong "undergo a fitness-for-duty examination." Perhaps most damning is this passage from Armstrong, excerpted verbatim:

> "On January 8, 2007, [Armstrong] was examined by Doctor Guillermo Gallegos at the Institute for Forensic Psychology, which conducts all psychological examinations for the JCPD. The testing consisted of an extensive diagnostic interview, psychological tests and review of [Armstrong's] internal affairs record. In his report to [JCPD Captain Brian] O'Callahan, Dr. Gallegos described [Armstrong] as rigid, authoritarian and suspicious. He stated that [Armstrong] demonstrated "**blurred boundaries between his interests as a private citizen, and the responsibilities of a police officer**," and the doctor was concerned with [Armstrong's" "**apparent proclivity to use the authority of his role as a police officer to exert punishment on those he perceives as having crossed him in any way in his private life**." Dr. Gallegos concluded that [Armstrong] was not fit for regular duty, and recommended that he be assigned to light duty." Id.

50. PD subsequently placed Armstrong on desk duty and took away his service weapon, and only reinstated him as a detective after he underwent six months of intensive psychotherapy. Id.

51. Alas, JC, PD, and the other Defendants apparently forgot the lessons of the past: In 2014, Armstrong's history of abusing both his position and the citizens he is supposed to protect notwithstanding, JC and PD ***promoted*** Armstrong.

9

## FIRST CAUSE OF ACTION:
## CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – FALSE ARREST AGAINST ALL DEFENDANTS

52. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

53. Plaintiff had a firmly established right under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from arrest without probable cause and to be entitled to due process.

54. An arrest and subsequent detention without reasonable suspicion that a citizen has committed a crime violates the Fourth Amendment as described in <u>Papachristou v. City of Jacksonville</u>, 405 U.S. 156, 169 (1972)) ("Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause").

55. ARMSTRONG had no reasonable basis to believe LINDOR committed a crime at the Gathering, **even according to his own police report**, recorded just minutes after ARMSTRONG's confrontation with LINDOR at the gathering, which reads:

> Prior to leaving the scene the undersigned was speaking to an officer when another male (black male, dark skin, heavy build, multi-colored shirt, medium length curly black hair) walked up demanding to know who did I think I was arresting his cousins. The undersigned advised/the male that the situation was out of hand and he would have to leave the area. The male stated that he did not have to leave and stated that he was a law student and that he was with the corporation counsel and the mayor's office and he would have me arrested. The male was advised to leave several more times and he refused. The undersigned then requested identification from the male and advised him that he would be receiving a summons for failure to disperse, and he refused. The undersigned requested the male's identification several more time and he refused, stating that he would not give me anything but would give his identification to another officer. The male then spoke with P.O. Ortiz and verbally gave him his name and address (Pierre D. Lindor, 4/12/77, 5 Astor Place, (201)926-6129, DL #L44746306404772). The male was advised that he would be receiving his summons in the mail and allowed to go on his way.

The behavior ARMSTRONG attributes to LINDOR in his own report does not merit charges under N.J.S.A. 2C:33-1 and 2C:33-2a, and no reasonable officer could conclude otherwise. LINDOR questioned ARMSTRONG on private property to which LINDOR was an invitee and lawfully refused the off-duty ARMSTRONG's request for identification. ARMSTRONG's own report in no way describes behavior that any reasonable officer could describe as "Riot" or "Disorderly Conduct."

56. Nonetheless, ARMSTRONG provided a false statement to Detective Simmons to secure a warrant for Pierre's arrest.

57. ARMSTRONG unreasonably waited to provide this false statement to Detective Simmons when he had known LINDOR's identity and provided statements for the arrests of Mr. Guillaume and others from the Gathering more than ten months prior. At a minimum, this unreasonable delay severely impeded LINDOR's ability to defend himself against ARMSTRONG's bogus charges, and thereby deprived him the process which he was due: Among other things, over the course of nearly a year, memories faded, witnesses splintered and other defendants moved entirely through the judicial process (and had their charges dismissed) prior to LINDOR even being charged, thus denying LINDOR certain resources that could have aided him in ensuring an accurate determination in his case.

58. ARMSTRONG's behavior appears to have been motivated by his well-documented desire to exact revenge on those whom he believes have crossed him using his power as a police officer – in other words, it appears ARMSTRONG took steps to have LINDOR arrested because LINDOR confronted him at the Gathering and lawfully refused to obey certain of ARMSTRONG's orders.

59. ARMSTRONG subjected Plaintiff to these violations and deprivations of his rights either maliciously or acting with a reckless and/or callous disregard for whether Plaintiff's rights would be violated by seeking to have LINDOR arrested nearly a year after the Gathering, and for actions which, even according to ARMSTRONG's own report, no reasonable person could believe constituted the violations listed in the warrant.

60. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, has continued to suffer damages, and will continue to suffer damages.

61. As a result of their actions, Defendants, acting under the "color of law," deprived Plaintiff of his rights to freedom, including his right to freedom from unlawful arrest and false imprisonment without probable cause and/or due process of law, in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42. U.S.C. § 1983.

62. Defendants subjected Plaintiff to these depravations of his rights either maliciously or by acting with a reckless disregard for whether Plaintiff's rights would be violated by their actions.

63. As a direct and proximate result of the various aforesaid occurrences and Defendants' actions, Plaintiff suffered, has continued to suffer and will continue to suffer damages and injuries

**SECOND CAUSE OF ACTION:**
**CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – ABUSE OF PROCESS**
**AGAINST ALL DEFENDANTS**

64. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

65. Plaintiff had the unquestioned right under the United States Constitution to be free from state officials abusing government process to his detriment. See Jennings v. Shuman, 567 F.2d 1213, 1220 (3rd Cir. 1977).

66. Defendant ARMSTRONG used his power as a police officer to wield the New Jersey justice system against LINDOR's for his own petty revenge, a clear and intentional violation of LINDOR's rights.

67. As a direct and proximate result of the various aforesaid occurrences and Defendants' actions, LINDOR suffered, has continued to suffer and will continue to suffer damages and injuries.

### THIRD CAUSE OF ACTION:
### CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – RETALIATION AGAINST ALL DEFENDANTS

68. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

69. Plaintiffs had the unquestioned right under the First Amendment to the United States Constitution to, *inter alia*, ask ARMSTRONG, as a police officer, why he had arrested Mr. Guillaume and others at the Gathering.

70. However, ARMSTRONG took LINDOR's questions as a challenge to his authority, to which ARMSTRONG reacted with an improper use of his police authority to have Pierre arrested.

71. ARMSTRONG thus doctored charges against Plaintiff to have him arrested and detained.

13

72. ARMSTRONG's retaliation against Plaintiff was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

73. As a direct and proximate result of the various aforesaid occurrences and Defendants' actions, LINDOR suffered, has continued to suffer and will continue to suffer damages and injuries.

**FOURTH CAUSE OF ACTION:**
**CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – FALSE STATEMENTS**
**AGAINST ALL DEFENDANTS**

74. LINDOR repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

75. ARMSTRONG and various other Defendants conspired to give a false account of the facts in the arrest and/or detention and/or charging of Plaintiff.

76. ARMSTRONG and other Defendants maliciously and intentionally made false statements regarding the Plaintiff's actions in police reports, court documents, and in statements to superiors and prosecutors.

77. ARMSTRONG and the other Defendants acted under the color of law and in the scope of their employment in violating Plaintiff's rights and depriving Plaintiff of his rights.

78. ARMSTRONG and the other Defendants' making of such false statements was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights.

79. As a direct and proximate result of the various aforesaid occurrences and Defendants' actions and omissions, Plaintiff suffered, has continued to suffer and will continue to suffer damages and injuries. Defendants are consequently liable for these harms pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

**FIFTH CAUSE OF ACTION:**
**CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS**

80. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

81. Defendants subjected LINDOR to criminal judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in LINDOR's favor in a manner indicative of innocence.

82. ARMSTRONG and the other Defendants acted under the color of law and in the scope of their employment in violating Plaintiff's rights and depriving Plaintiff of his rights.

83. ARMSTRONG and the other Defendants' prosecution of such bogus charges was objectively unreasonable and was undertaken intentionally with willful indifference to LINDOR's rights.

84. As a direct and proximate result of the various aforesaid occurrences and Defendants' actions, Plaintiff suffered, has continued to suffer and will continue to suffer damages and injuries.

**SIXTH CAUSE OF ACTION:**

**CIVIL RIGHTS ACTION (42 U.S.C. § 1983) – MUNICIPAL LIABILITY AGAINST DEFENDANTS CITY OF JERSEY CITY AND JERSEY CITY POLICE DEPARTMENT**

85. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

86. Defendants JC and PD are municipal policymakers, where any policies JC and PD make are manifested in the hiring, training and supervision of police officers, including, but not limited to, ARMSTRONG and any Does 1-10 who may be police officers.

87. In this vein, JC and PD have pursued a policy and custom of deliberate indifference to the rights of persons in their domain, and, more specifically, to Plaintiff, which violated Plaintiff's rights to freedom from deprivation of various liberties and rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

88. As a direct and proximate result of the aforementioned policy and custom of deliberate indifference of JC and PD, Armstrong and/or various other Defendants committed the unlawful acts referred to above.

**SEVENTH CAUSE OF ACTION:
VIOLATION OF NEW JERSEY CIVIL RIGHTS ACT AGAINST ALL DEFENDANTS**

89. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if same were more fully set forth herein.

90. Defendants are "persons" within the definition of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, et seq., and are required to act pursuant to the provisions expressed therein.

16

91. Defendants, at all relevant times, included a New Jersey State municipality and its employees and agents.

92. Defendants were, at all relevant times, acting under the color of law.

93. Through their various actions, Defendants implemented unconstitutional policies to unlawfully restrain, unlawfully arrest, wrongfully imprison, retaliate against, make false statements against, and/or maliciously prosecute bogus charges against LINDOR.

94. These policies were established by JC, PD and/or officials appointed by the municipality and delegated with express authority to make, adopt and enforce policies, rules, orders and regulations.

95. Application of these policies to Plaintiff had the effect of depriving him of due process and equal protection guaranteed under the New Jersey State Constitution.

96. The aforesaid unlawful acts of Defendants were done willfully, maliciously and with reckless disregard of Plaintiff's rights.

97. As a direct and proximate cause of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered, continue to suffer and will continue to suffer damages.

**[Remainder of page left intentionally blank]**

**WHEREFORE**, LINDOR respectfully requests that this Court:

    a.    award Plaintiff compensatory damages in an amount that is fair and reasonable, to be determined at trial;

    b.    award Plaintiff punitive damages against the Defendants in an amount to be determined at trial;

    c.    award Plaintiff attorneys' fees and costs, and interest; and

    d.    grant such other and further relief as this Court may deem appropriate, equitable, just and proper.

Respectfully submitted,

HAMILTON CLARKE, LLP
Attorneys for Plaintiff PIERRE LINDOR, JR

Hamilton Clarke, LLP
Lance A. Clarke, Esq.
Hamilton|Clarke, LLP
48 Wall Street, Suite 1100
New York, New York 10005

/s/ Lance A. Clarke, Esq.

Dated: October 13, 2021
       Jersey City, NJ

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Lance A. Clarke, Esq. of Hamilton Clarke, LLP is hereby designated as trial counsel for the Plaintiff, PIERRE LINDOR, JR.

                HAMILTON CLARKE, LLP
                Attorneys for Plaintiff PIERRE LINDOR, JR

                Hamilton Clarke, LLP
                Lance A. Clarke, Esq.
                Hamilton|Clarke, LLP
                48 Wall Street, Suite 1100
                New York, New York 10005


                /s/ Lance A. Clarke, Esq.

Dated:  October 13, 2021
         Jersey City, NJ

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this pleading, I know of no other parties that should be joined in the above action. In addition, I recognize the continuing obligation of each gathering to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

/s/ Lance A. Clarke, Esq.

Dated: October 13, 2021
Jersey City, NJ